CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JAN 05 2009
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

FATIMA PARKER,

                *Plaintiff,*

v.

ALBEMARLE COUNTY PUBLIC
SCHOOLS, ET AL.,

                *Defendants.*

CIVIL NO. 3:08cv00040

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

    This case is before the court on the Defendants' Motion to Dismiss the Complaint (docket no. 24). The matter has been fully briefed by the parties, and arguments were heard on December 22, 2008. The Motion is therefore ripe for decision. For the following reasons, the Defendants' Motion will be granted.

## I. BACKGROUND

    This case involves a pro se Plaintiff, Fatima Parker, who is an African-American woman employed as a special education teacher by the Albemarle County Public Schools ("ACPS"). The Defendants are ACPS as well as individual employees of the school system, members of the school board, and school administrators. This action arises out of an incident involving the Plaintiff at a school basketball game on October 4, 2007. The Plaintiff was a spectator at the game, and believed that the referee, an African-American man, was making bad calls. The Plaintiff made a comment to a fellow spectator about the quality of the calls, which the referee overheard. The referee confronted the Plaintiff and asked her what she had said. The Plaintiff

responded "I was not talking to you." Later in the game, the Plaintiff made another comment to a fellow spectator about the referee's calls. The referee confronted the Plaintiff again and asked her, "Do you have a problem?" The Plaintiff initially ignored him, but he repeated his question. Plaintiff then "moved her face closer to him, pursed her lips, and said 'Do you, Nigger?'" (Compl. ¶ 3.) After that, the referee left the Plaintiff alone for the rest of the game.

The next day, the principal of Plaintiff's school, Defendant Kathryn Baylor, informed her that the referee had filed a complaint against her for "calling him the 'N-word.'" (Compl. ¶ 19.) Ms. Baylor also said that the NAACP had filed a complaint over the incident as well. She required the Plaintiff to submit a statement describing the incident, which Plaintiff did that day. On October 15, 2007, Defendant Kimberly Suyes, the Human Resources Director for ACPS, reiterated Ms. Baylor's allegations of complaints by the referee and the NAACP, and charged the Plaintiff with using obscene and abusive language. As a result, the Plaintiff was suspended for five days with pay, received a Reprimand and Suspension Notice in her employee file, was referred to the Employee Assistance Program, was prohibited from attending any school sporting events for the rest of the school year, and was required to write a letter of apology to the referee.

The Plaintiff subsequently discovered that neither the referee nor the NAACP had actually filed a complaint about the incident. When she confronted Ms. Suyes, Ms. Suyes admitted that no complaint had been filed but that ACPS was investigating the incident based on Plaintiff's admission of guilt. On October 30, 2007, the Plaintiff filed a grievance over the disciplinary action on the grounds that she had not received due process. The grievance was denied on November 13, 2007, and Plaintiff appealed the denial. On November 27, 2007, the Plaintiff had a meeting with the Assistant Superintendent of ACPS at which evidence in the form of testimony and written statements was taken. The Plaintiff's appeal was denied on December

4, 2007. The Plaintiff again appealed this decision to the School Board. The School Board decided to proceed to a fact-finding panel. The Complaint does not describe the outcome of that panel.

The Plaintiff filed a charge with the EEOC on February 11, 2008, which was ultimately denied. She was issued a right-to-sue letter on May 2, 2008.

Based on this course of events, the Plaintiff claims that she was denied due process and equal protection, and sues under 42 U.S.C. § 1983. She also alleges a conspiracy to violate her civil rights under 42 U.S.C. § 1985. She further alleges violations of her Fifth Amendment right against self-incrimination, and her Sixth Amendment confrontation rights. Finally, she alleges that the Defendants maliciously prosecuted her based on a false complaint.

The Plaintiff essentially alleges that there were defects in the process by which she was disciplined and in the process by which the discipline was upheld. First, Plaintiff argues that she was coerced into admitting her guilt by false allegations that the referee and the NAACP had filed a complaint against her. Second, Plaintiff complains that the Defendants failed to comply with various provisions of the ACPS's disciplinary and grievance procedures. The Plaintiff alleges that the substance of her appeals and grievances were never addressed, and that insufficient reasons were given for denying the relief requested by the Plaintiff. The Plaintiff also argues that after she requested a hearing before the full School Board, the School Board had ten days to respond to the request. However, it issued its response on the eleventh day. Plaintiff points to a School Board policy that the failure of the School Board to comply "with all substantial procedural requirements without just case shall entitle the grievant . . . to a decision in his favor" if the grievant is at the final step of the procedure. Plaintiff contends that she was at the final step of the procedure at this point, and is therefore entitled to a decision in her favor as a

result of the School Board's late response. The Plaintiff alleges that while the School Board determined that it had just cause for the delay, it did not explain what the basis of that determination was, and in fact did not have just cause. The Plaintiff alleges that the School Board falsified the date of the response when it provided a copy to the EEOC, in order to avoid revealing the motives for the just cause determination.

The Plaintiff argues that the use of the "n-word" between African-Americans is culturally acceptable, and that her use of the word at the basketball game did not constitute obscene or abusive language. She contends that the School Board and school administrators ignored testimony or statements from several African-Americans about the cultural implications of the "n-word" when used by African-Americans. As a result, their conclusion that the Plaintiff used abusive and obscene language is tinged with racial bias. She also argues that the severity of the punishment was not proportional to the severity of the offense, which she contends was minor, in light of the cultural implications of her use of the "n-word."

The Defendants now move to dismiss all counts of the Complaint as to all Defendants, on the grounds that the Plaintiff has failed to state a claim. Fed. R. Civ. P. 12(b)(6).

## II. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See id.* at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). The plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965

(2007).

The Plaintiff in this case is proceeding *pro se*. *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978). This Court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam). The Fourth Circuit has noted that district courts "must be especially solicitous of civil rights plaintiffs." *Gordon*, 574 F.2d at 1151. This means that courts must "examine the *pro se* complaint to see whether the facts alleged, or the set of facts which the plaintiff might be able to prove, could very well provide a basis for recovery under any of the civil rights acts . . . in the federal arsenal for redress of constitutional deprivations." *Id.*[1]

### III. DISCUSSION

A.   Procedural Due Process

In order to state claim of denial of procedural due process, the Plaintiff must show that (1) she had a liberty or property interest, (2) of which a state actor deprived her, (3) without due process of law. *Sylvia Development Corp. v. Calvert County, Md.*, 48 F.3d 810, 826 (4th Cir. 1995).

Courts look to state law to determine whether an employee has a property interest in his or her employment. *Knight v. Vernon*, 214 F.3d 544, 553 (4th Cir. 2000). Virginia Code § 22.1-

---

[1] In accordance with this standard, the Court ordered supplemental briefing to address whether the Plaintiff might state a claim under Title VII of the Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq. The parties timely filed their memoranda and addressed this issue at the hearing. The Plaintiff declined to pursue a Title VII claim because her allegations of racism related only to the grievance procedure, and not to the initial disciplinary action taken against her. Without an allegation that she was disciplined because of her race, the Plaintiff cannot state a claim under Title VII. *See Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 264 (4th Cir. 2008) (plaintiff's admission that termination was for a reason unrelated to race negated claim of racial discrimination under Title VII). Even if the Plaintiff had brought a Title VII claim, however, it would have been procedurally barred because it was filed more than 90 days after she received her right to sue letter from the EEOC. *See* 42 U.S.C. § 2000e-16(c). The right to sue letter was issued on May 2, 2008, and the Complaint was filed on August 18, 2008.

303 confers tenure ("continuing contract status") upon teachers after three full years of probationary service. That status provides teachers with a property interest in continued employment. *See Echtenkamp v. Loudon County Public Schools*, 263 F.Supp.2d 1043, 1054 (E.D.Va. 2003). Here, the Plaintiff has not alleged whether she has achieved this status. Teachers on probationary status do not have a property interest in their employment. *See Lewis v. Amherst County School Bd.*, 1998 WL 372814 (4th Cir. 1998). Therefore, the allegations in the Complaint are insufficient to allege that Plaintiff has a property interest in her employment.

Even if the Plaintiff could show that she has a property interest in her employment, it does not appear that she was deprived of that interest because she was suspended <u>with</u> pay. *See Royster v. Bd. of Trustees*, 774 F.2d 618, 621 (4th Cir. 1985), *cert. denied*, 475 U.S. 1121 (1986) (rejecting the argument that the plaintiff had a property interest in executing the duties of his position and holding that "any constitutionally protected property interest Royster had as a result of his employment contract has been satisfied by payment of the full compensation due under the contract."); *Echtenkamp*, 263 F.Supp.2d at 1054 (loss of responsibility and placement on evaluation track does not deprive plaintiff of property interest, where plaintiff's monetary compensation was unaffected).[2]

To state a claim of deprivation of liberty without due process, a plaintiff must allege damage to his or her good name, reputation, honor or integrity, or a stigmatic injury to an employment interest likely to impair future work-related opportunities. *Bd. of Reg. of State Colleges v. Roth*, 408 U.S. 564, 573-74 (1972). The plaintiff must also allege that the statements made about her were made public by the employer, *Bishop v. Wood*, 426 U.S. 341, 348-49

---

[2] The Plaintiff alleges that as a result of her suspension, she lost compensation for hours she normally works as a tutor before and after school. However, the Plaintiff has not alleged sufficient facts to show that she has a property interest in this work, such that the loss of this compensation might form the basis of a due process claim. Further, as discussed *infra*, even if she does have a property interest in her work as a tutor, she received due process before she was deprived of that interest.

-6-

(1976), and that they were false, *see Codd v. Velger*, 429 U.S. 624, 627 (1977). The Plaintiff argues that the record of this incident in her file, and the ACPS's determination that she used "offensive or abusive language" impairs her future employment opportunities. However, she has made no allegations that any specific disparaging statements were made that damage her good name, reputation, honor or integrity. The Plaintiff has not alleged that any false statements were made about her. The Plaintiff clearly admits the underlying conduct of using the "n-word," which can be reasonably described as offensive language. The Plaintiff does not describe any specific statements made by her employer that could form the basis of a liberty interest claim.

Finally, even if the Plaintiff does have a property interest in her employment or a liberty interest of which she was deprived, she received due process. Due process requires, at the minimum, "adequate notice, a specification of the charges against her, an opportunity to confront the witnesses against her and an opportunity to be her heard in her own defense." *Grimes v. Nottoway County School Board*, 462 F.2d 650, 653 (4th Cir. 1972), *cert. denied*, 409 U.S. 1008 (1972). In this case, the Plaintiff received an opportunity to submit a statement and file a grievance. She was then afforded multiple levels of review of that grievance, which included an opportunity to be heard and present evidence on her behalf.[3]

The Plaintiff claims that the School Board violated its own policies applicable to the review and grievance procedures, such that she was denied due process. However, a violation of grievance procedures does not necessarily constitute a violation of due process under the Constitution. As the Fourth Circuit has made clear, so long as "minimal [Fourteenth Amendment] due process requirements of notice and hearing have been met," a claim that "an

---

[3] Although the Plaintiff argues that she was not given the opportunity to confront the witnesses against her, she admits that provided a statement describing the incident, and that the disciplinary action was based on that statement. Therefore, because the Plaintiff does not dispute the factual account of the incident leading to the discipline, the allegations that she was not able to confront any witnesses against her do not rise to the level of a due process claim.

agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations." *Goodrich v. Newport News School Bd.*, 743 F.2d 225, 227 (4th Cir.1984). In other words, "the fourteenth amendment does not require a local school board to adhere to its own guidelines as long as minimum due process is accorded." *Id.* Those minimum requirements were accorded to the Plaintiff in this case, and as a result, she cannot state a claim of a procedural due process violation.

B. Substantive Due Process

To state a claim for a violation of substantive due process, a plaintiff must allege (1) that she has a property interest (2) of which she was deprived by state action, and (3) the state's action falls "so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 827 (4th Cir. 1995). As discussed above, Plaintiff has not sufficiently alleged that she had a property interest in her employment, nor that she was deprived of that interest. Therefore, she has failed to state a claim of a violation of substantive due process.

C. Conspiracy to Violate Civil Rights

In order to state a claim of conspiracy to violate one's civil rights under 42 U.S.C. § 1985, a plaintiff must allege: (1) a conspiracy of two or more persons; (2) who are motivated by a specific class-based, invidiously discriminatory animus; (3) to deprive the plaintiff of the equal enjoyment of rights secured by the law to all; (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). Such a claim must be supported by concrete facts, and will not survive if it is supported only by conclusory allegations. *Id.* at 1377.

In this case, the Plaintiff does not sufficiently allege a conspiracy. The Plaintiff "must

show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Id.* The Plaintiff here alleges no facts that would support a conclusion that the Defendants conspired to deprive her of her constitutional rights. *See Assa'Ad-Faltas v. Com. of Va.*, 738 F.Supp. 982, 986 (E.D.Va. 1989). She makes only conclusory allegations of a conspiracy to uphold the disciplinary action taken against her. These allegations are insufficient to state a claim of conspiracy.

D. Malicious Prosecution

In order to state a claim for malicious prosecution, a plaintiff must allege that (1) the prosecution was set on foot by the defendant and it terminated in a manner not unfavorable to the plaintiff; (2) it was instituted or procured by the cooperation of the defendant; (3) it was without probable cause; and (4) it was malicious. *Pallas v. Zaharopoulos*, 219 Va. 751 (1979). Further, when a claim of malicious prosecution arises out of prior civil proceedings, the plaintiff must also allege personal arrest, property seizure, or a special injury. *Ely v. Whitlock*, 238 Va. 670, 673-74 (1989) (*citing Ayyildiz v. Kidd*, 220 Va. 1080, 1083 (1980)). A "special injury" is "a special loss or unusual hardship" that would not usually occur as a result of the type of prosecution at issue. *Id.* In this case, the Plaintiff failed to allege several of these elements, including the existence of a special injury, that the proceedings terminated in a manner favorable to the Plaintiff, and that the "prosecution" was without probable cause. Therefore, the claim of malicious prosecution fails.

E. Confrontation Rights

The Plaintiff argues that Defendants violated her Sixth Amendment right to confront the witnesses against her. However, the Sixth Amendment applies only in the criminal context. *See United States v. Baker*, 45 F.3d 837, 845 (4th Cir. 1995). Since there were obviously no criminal

proceedings at issue here, the Sixth Amendment does not apply.

F. <u>Right against Self-incrimination</u>

The Plaintiff also appears to argue that the Defendants violated her Fifth Amendment right against self-incrimination. However, the right against self-incrimination applies only to testimonial statements that are *incriminating*. *See United States v. Sweets*, 526 F.3d 122, 127 (4th Cir. 2007). "Incriminating" means "demonstrating or indicating involvement in criminal activity." Black's Law Dictionary (8th ed. 2004). It is clear that the utterance of the "n-word" in this context does not qualify as a crime. Therefore, the right against self-incrimination is not applicable in this case.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff has failed to state a claim upon which relief may be granted, and the instant Motion will be granted. An appropriate Order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and accompanying Order to all counsel of record and to the Plaintiff.

ENTERED: This 5th Day of Jan, 2009.

*Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE